**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**
**CAMDEN VICINAGE**

|  |  |
|---|---|
| DARA WOODALL, | Civil Action No. 17-1847 (RMB) |
| Petitioner, |  |
| v. | OPINION |
| WILLIAM ANDERSON, *et al.*, |  |
| Respondents. |  |

**Appearances:**

Stanley O. King, Esq.
King & King
231 S. Broad St.
Woodbury, New Jersey 08096

John J. Lafferty, IV, Esq.
4997 Unami Blvd.
Mays Landing, New Jersey 08226

**BUMB, United States District Judge**

**I. INTRODUCTION**

On March 16, 2017, Petitioner Dara Woodall ("Petitioner"), a state prisoner incarcerated in Edna Mahan Correctional Facility in Clinton, New, Jersey, filed a pro se Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person In State Custody, challenging her October 8, 2009 conviction and sentence in Atlantic County, New Jersey for murder and weapons charges. (Pet., ECF No.

1, ¶¶1-5.) Respondents filed a motion to dismiss the petition as barred by the statute of limitations (Mot. to Dismiss, ECF No. 8), and Petitioner filed a brief in opposition to the motion to dismiss. ("Petr's Opp. Brief," ECF No. 9.)

On February 1, 2018, this Court issued an Opinion and Order, finding that the one-year statute of limitations period for Petitioner's petition for writ of habeas corpus under 28 U.S.C. § 2254 began to run on March 8, 2012 and expired on March 8, 2013. (Opinion, ECF No. 10 at 9.) When Petitioner filed her PCR petition on March 4, 2014, it was too late to toll the statute of limitations under 28 U.S.C. § 2244(d)(2). (Id.)

Petitioner argued that abandonment by her PCR attorney justified equitable tolling of the statute of limitations. (Id.) She alleged that

> after petitioner's state direct appeal became final on March 7, 2012, she was in communication repeatedly with Stephen Kirsch, the attorney who represented her on direct appeal, requesting that the Public Defender proceed with preparation and filing of her post-conviction relief petition. She was repeatedly told to "wait" and "give it time" and the Public Defender never did prepare and file the documents. Finally, petitioner prepared and filed her own petition in March 2014.

(Id. at 9-10.) Petitioner also alleged that the New Jersey Public Defender's Office typically sends letters advising inmates of the results of their state court appeals and advises inmates to file

2

their federal habeas petitions. (Id. at 10.) Petitioner asserted, however, that she was under the impression that her appellate lawyer would represent her in the post-conviction proceedings, including habeas corpus. (Opinion, ECF No. 10 at 10.) This Court administratively terminated Respondents' motion to dismiss, appointed counsel to represent Petitioner, and scheduled an evidentiary hearing on the issue of equitable tolling. (Id. at 11.)

II. DISCUSSION

   A. <u>Legal Standard for Equitable Tolling of Statute of Limitations Under 28 U.S.C. § 2244(d).</u>

Equitable tolling applies to the one-year statute of limitations under 28 U.S.C. § 2244(d) in appropriate cases. <u>Holland v. Florida</u>, 560 U.S. 631, 645 (2010). A petitioner is entitled to equitable tolling if "he shows: '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." Id. (quoting <u>Pace v. DiGuglielmo</u>, 544 U.S 408, 418 (2005). Garden variety attorney neglect, such as a miscalculation that leads to missing a deadline, is not an extraordinary circumstance that warrants equitable tolling, but more serious instances of attorney misconduct may warrant equitable tolling. Id. at 651-52.

The diligence required of a habeas petitioner in pursuing his or her remedies is "'reasonable diligence, not maximum feasible

diligence.'" Munchinski v. Wilson, 694 F.3d 308, 330 (3d Cir. 2012) (quoting Holland, 130 S.Ct. at 2565 (internal quotation marks and citations omitted)). "The diligence inquiry is fact-specific and depends on the circumstances faced by the particular petitioner." Id. at 331. Thus, "[i]f a petitioner 'did what he reasonably thought was necessary to preserve his rights ... based on information he received ..., then he can hardly be faulted for not acting more 'diligently' than he did.'" Id. (quoting Holmes v. Spencer, 685 F.3d 51, 65 (1st Cir. 2012)). The reasonable diligence obligation extends to the period when the appellant is exhausting state court remedies. Ross v. Verano, 712 F.3d 784, 799 (3d Cir. 2013) (citing LaCava v. Kyler, 398 F.3d 271, 277 (3d Cir. 2005) (citing Jones v. Morton, 195 F.3d 153, 160) (3d Cir. 1999)). "The fact that a petitioner is proceeding pro se does not insulate him from the 'reasonable diligence' inquiry and his lack of legal knowledge or legal training does not alone justify equitable tolling." Id. at 799–800.

    The Supreme Court in Holland noted that

> Holland not only wrote his attorney numerous letters seeking crucial information and providing direction; he also repeatedly contacted the state courts, their clerks, and the Florida State Bar Association in an effort to have Collins—the central impediment to the pursuit of his legal remedy—removed from his case. And, the very day that Holland discovered that his AEDPA clock had expired due to Collins' failings,

> Holland prepared his own habeas petition pro se and promptly filed it with the District Court.

Id. at 653.

### B. The Evidentiary Hearing

An evidentiary hearing was held in this matter on October 10, 2018 and continued October 19, 2018. (Minute Entry, ECF No. 23; Transcript of Proceedings, ECF Nos. 22, 24.) Stephen Kirsch, Atiya Woodall, and Petitioner Dara Woodall testified. The Court requested the parties to submit post-trial briefs. (Minute Entry, ECF No. 23.)

### C. The Parties' Post-Trial Briefs

#### 1. Petitioner contends her failure to timely file her habeas petition should be excused based on gross negligence by her appellate attorney

Petitioner contends that she exercised reasonable diligence in pursuing her habeas corpus action in this Court. (Petitioner's Post-trial Brief, ECF No. 25 at 2.) Petitioner has been incarcerated since 2009 and had a ninth or tenth grade education when incarcerated. (Id.) She did not know the meaning of post-conviction relief, and no one explained the appellate process to her. (Id.) Her appellate attorney, Stephen Kirsch, testified that he did not remember speaking to her about the PCR process. (Id.) Petitioner believed Kirsch was assigned to her case "to help her fight for her life." (Id.) Petitioner testified that Kirsch told her to be patient because these things take time. (Id.)

5

Petitioner contends she diligently pursued communications with Kirsch to "check up on her case." (Id.) She first learned that Kirsch would represent her [on direct appeal] by letter dated September 9, 2010. (Id.) Petitioner spoke to Kirsch on two occasions, one by a video conference in late 2010 or January 2011 and the other by telephone approximately four months after Kirsch was assigned to represent Petitioner. (Id.)

Petitioner attempted to call Kirsch on numerous occasions to check on her case. (Id.) She sent him one handwritten note. (Id.) Kirsch did not respond to her. (Id.) Petitioner asked her aunt, Atiya Woodall, to contact Kirsch. (Id.) Atiya Woodall testified that she had two conversations with Kirsch on behalf of Petitioner. (Id.) Their first conversation occurred early in the direct appeal process. (Id.) After that, Atiya Woodall called Kirsch eight to ten times and he did not return her calls. (Id.)

Atiya Woodall's second conversation with Kirsch occurred after Petitioner's direct appeal in the Appellate Division failed. (Id.) Kirsch told Atiya that Petitioner's petition was still pending before the New Jersey Supreme Court. (Id.) Kirsch did not speak with Atiya or Petitioner after the New Jersey Supreme Court denied certification. (Id.)

Years after her direct appeal, Petitioner learned from a fellow inmate, whom she referred to as in-house counsel because the inmate assisted her with legal paperwork, that her direct

6

appeal had been unsuccessful. (Id.) This inmate assisted Petitioner in filing her Verified Petition for Post-Conviction Relief on March 4, 2014. (Petitioner's Post-trial Brief, ECF No. 25 at 3.) The PCR petition was denied on October 16, 2014, and Petitioner filed a notice of appeal on November 20, 2014. (Id.) After the Appellate Division affirmed the PCR Court on April 5, 2016, Petitioner filed a petition for certification in the New Jersey Supreme Court, which was denied on November 29, 2016. (Id.) Petitioner filed her habeas petition on March 16, 2017. (Id. at 4.)

Mr. Kirsch testified that he sent six letters to Petitioner. (Id. at 5.) Petitioner acknowledged receiving a January 28, 2011 cover letter from Kirsch, forwarding a copy of her appellate brief, appendix and presentence report. (Id.) Petitioner signed a copy, acknowledging receipt. (Id.) On December 9, 2011, Kirsch sent Petitioner a letter advising her that the New Jersey Supreme Court denied her petition for certification and that Kirsch would no longer represent her. (Id.) Petitioner testified that she did not receive the December 9, 2011 letter. (Id.) Kirsch never followed up with Woodall to confirm that she received and understood his letters to her. (Id. at 6.) Petitioner asserts that her failure to timely file her PCR petition, resulting in her failure to timely file her habeas petition, was caused by Kirsch's gross negligence in failing to communicate with her. (Id. at 7-8.)

7

2. Respondents argue Petitioner is not entitled to equitable tolling of the habeas statute of limitations.

Respondents note that in granting Petitioner an evidentiary hearing on the issue of equitable tolling of the habeas statute of limitations, this Court stated,

> If indeed Woodall's public defender agreed to represent her in her post-conviction proceedings and told her to wait and give it time before starting the proceedings, without informing her of the potential consequences to her federal habeas claims, Woodall may be entitled to equitable tolling.

(Respondents' Post-trial Brief, ECF No. 26 at 1.) Based on his credible testimony at the hearing, Kirsch never agreed to represent Petitioner on PCR or any subsequent proceedings. (Id.) Kirsch told Petitioner only that a PCR comes after a direct appeal. (Id. at 2.) Even if Petitioner did not receive Kirsch's December 9, 2011 letter, Petitioner did not follow up with Kirsch after that, undermining her argument that her untimely filing was Kirsch's fault. (Id. at 2.)

III. FINDINGS OF FACT

1. The Court finds Mr. Kirsch's testimony fully credible.

2. Mr. Kirsch is an Appellate Public Defender in the Trenton, New Jersey Office. (Oct. 10, 2018 Hr'g Tr. at 6:21-23, ECF No. 22.)

3. Mr. Kirsch has worked for the New Jersey Public Defender's Office since August 1989. (Id. at 7:2-3.) He has 31 years of experience in criminal appellate practice. (Id. at 8:1-9.)

8

4.  Whenever Mr. Kirsch receives an assignment to serve as an Appellate Public Defender, he sends his client a letter providing his contact information. (October 10, 2018 Hr'g Tr. at 10:19-11:7, ECF No. 22.) He sent such a letter to Petitioner on September 9, 2010. (Id. at 18:21-25.)

5.  A letter dated September 9, 2010 from the Office of the Public Defender, Appellate Section to Petitioner was submitted into evidence as Exhibit 6. (Id. at 79:25-80:2) The body of the letter states:

    > The Office of the Public Defender has filed an appeal on your behalf. The Assistant Deputy Public Defender who will represent you in this appeal is: Stephen W. Kirsch, Office of the Public Defender, Hughes Justice Complex, P.O. Box 850, 25 West Market Street, Trenton, New Jersey 08625.
    >
    > Enclosed are the transcripts and the Adult Presentence Report in your case. These have been filed with the Appellate Division and will be relied on in your appeal. You will hear from your attorney as soon as he or she has reviewed your file.
    >
    > Please acknowledge receipt of these materials by signing the enclosed copy of this letter and returning it to your attorney in the enclosed self-addressed stamped envelope.
    >
    > (ECF No. 25-3 at 2.)

6.  On October 28, 2010, Kirsch sent Petitioner another letter, acknowledging several phone messages from her requesting a visit, but stating that he would set up a videoconference with her. (Oct. 10, 2018 Hr'g Tr. at 19:1-5, ECF No. 22 at 19.)

7.  The October 28, 2010 letter from Mr. Kirsch to Petitioner was submitted into evidence as Exhibit 7. (Id. at 80:3-4.) The body of the October 28, 2010 letter states:

> As you are already aware, I am the attorney assigned to represent you on appeal. I have received a couple of phone messages from you requesting that I visit you. I am going to set up a videoconference with you in the near future, but I want to wait to do so until I have read the transcripts in your case. That way we can have a meaningful discussion of the issues. I will be out of the office for about a week in the very early part of November, but I will read your transcripts as soon as I return, and set up a videoconference thereafter. If you have any questions about this letter or about the case, please call me collect at 609-292-1746, but be aware that I won't really be able to discuss the merits of the appeal until I have read the transcripts, at which point we will talk via videoconference.
>
> (ECF No. 25-6 at 2.)

8. Kirsch wrote another letter to Petitioner in November 2010, informing her that he was assigned an emergency appeal and he would have to set up their videoconference for December 2010 or January 2011. (October 10, 2018 Hr'g Tr. at 19:6-10.)

9. A letter from Mr. Kirsch to Petitioner, dated November 17, 2010, was submitted into the record as Exhibit 8. (Id. at 80:5-6.) The body of the letter states:

> I am writing to tell you that, unfortunately, it will likely be a while longer before I have a videoconference with you. I was about to begin work on your case when I was handed an emergency appeal to work on first. As a staff attorney, I do not control the assignment of cases, so I have to work on them as I am ordered to do so. I would anticipate speaking to you sometime in December, or at worst, early January, once I have fully read your transcripts. Sorry for the news about the delay, but I wanted to keep you in the loop and not have you wondering what was going on.
>
> (ECF No. 25-7 at 2.)

10. The only conversation Mr. Kirsch could recall having with Petitioner was at their videoconference. (October 10, 2018 Hr'g Tr. at 15:20-16:2, ECF No. 22.)

11. During the videoconference, Mr. Kirsch explained the general appellate process to Petitioner. Petitioner said that there were ineffective assistance of counsel claims she wanted to raise. Mr. Kirsch told her that in New Jersey, ineffective assistance of counsel claims should not be raised on direct appeal but should be raised later in PCR proceedings. (Id. at 16:6-17:1.) Petitioner seemed to understand. (Id.) Mr. Kirsch particularly recalls having an animated discussion because Petitioner was upset with her trial attorney. (Id. at 81:1-4.) They discussed sorting through which issues were appropriate for direct appeal and which were appropriate for PCR. (Id. at 81:4-8.)

12. On January 28, 2011, Mr. Kirsch sent Petitioner a cover letter enclosing a copy of her direct appeal brief, appendix and a copy of the presentence report. (Id. at 19:11-13.)

13. The January 28, 2011 letter from Mr. Kirsch to Petitioner was submitted into evidence as Exhibit 11. (Id. at 80:11-12.) The body of the letter states:

> Enclosed please find a copy of your brief and appendix and a copy of the Adult Presentence Report filed on your behalf, in the above matter. The transcripts were forwarded to you on September 9, 2010, under separate cover.
>
> Kindly sign the enclosed copy of this letter, acknowledging that you have received these documents and return the copy of the letter to me.
>
> (ECF No. 25-8 at 2.)

14. A letter from Mr. Kirsch to Petitioner, dated March 3, 2011, was submitted into evidence as Exhibit 10. (October 10, 2018 Hr'g Tr. at 80:9-10.) The body of the letter states:

11

> Enclosed is a copy of the Court's brief.
> I have requested oral argument in your
> case and I will advise you of the result
> in the case when I receive it. Call me
> collect at 609-292-1746 if you have any
> questions.

(ECF No. 25-9 at 2.)

15. A letter from Mr. Kirsch to Petitioner, dated July 1, 2011, was submitted into evidence as Exhibit 9. (October 10, 2019 Hr'g Tr. at 80:7-8.) The body of the letter states:

> I am sorry to say that the Appellate
> Division upheld your convictions and
> sentence in the enclosed opinion. I will
> petition the New Jersey Supreme Court to
> hear your case and I will inform you of
> the result when I receive it. Call me
> collect at 609-292-1746 if you have any
> questions.

(ECF No. 25-10 at 2.)

16. Mr. Kirsch recalled having one phone conversation with a relative of Petitioner's, whom he thought might have been her mother. (Id. at 33:1-4, ECF No. 22.) He remembered the call occurring after the appeal was denied, and possibly when the petition was pending in the Supreme Court. (Id. at 33:8-18.) Mr. Kirsch remembered that Petitioner's "mother" was annoyed that the appeal was denied. (Id.) He was not certain whether the call occurred before or after the "cert. denial." (Id. at 35:8-15.) The only communication Mr. Kirsch had with Petitioner after the denial of certification by the New Jersey Supreme Court was the letter he sent to her on December 9, 2011. (Id. at 35:17-36-2.)

17. A letter from Mr. Kirsch to Petitioner, dated December 9, 2011, was submitted into evidence as Exhibit 4.[1] The body of the letter states:

---

[1] Exhibit 3 is a duplicate of Exhibit 4, except Exhibit 3 is dated July 19, 2018, rather than December 9, 2011. (Ex. 3, ECF No. 25-11 at 2.) The Court credits Mr. Kirsch's testimony that he first produced this letter to Mr. King in discovery in this matter on

12

> I am sorry to inform you that the NJ Supreme Court has denied your petition for certification in the enclosed order. Because I see no chance that the federal courts will provide any relief for you, I must inform you that this office will no longer represent you on appeal in this matter. However, if you wish to continue the matter further on your own, and file a petition for state post–conviction relief (PCR), you should go to the law library at the prison, fill out the PCR form and file it with the criminal case manager in Atlantic County, and a lawyer will be appointed to handle that petition. Do this as soon as possible because the one-year deadline for filing for federal habeas corpus (if you eventually choose to file for habeas corpus on your own) runs until you file those state PCR papers. Call me collect at 609-292-1746 if you have any questions.

>    (Id. at 39:23-40:1; ECF No. 25-4 at 2.)

18. Mr. Kirsch did not follow up with Petitioner or her family members to see if Petitioner received his December 9, 2011 letter. (October 10, 2018 Hr'g Tr. at 49:5-11, ECF No. 22 at 49.)

19. Mr. Kirsch's employer directs its Appellate Public Defenders to inform clients that they must initiate the PCR process by filing a pro se document with the criminal case manager, which will trigger representation on PCR by the Public Defender's Office. Appellate Public Defenders do not handle trial-level PCR petitions, and they have not done so since the mid-1990s. (Id. at 62:4-20.)

---

July 19, 2018. Rather than retrieve the original letter from the file in his Newark Office, Mr. Kirsch printed a copy of the letter from his computer file in his Trenton office. His computer generated the date of June 19, 2018, although the letter was originally dated December 9, 2011. (October 10, 2018 Hr'g Tr., ECF No. 25:6-11; 27:8-25; 29:2-8, ECF No. 22.)

20. Mr. Kirsch never spoke to Petitioner about the PCR process. (October 10, 2018 Hr'g Tr. at 63:9-19, ECF No. 22.) During their one conversation by videoconference, Mr. Kirsch did not tell Petitioner he would represent her on PCR. (Id. at 63:20-24.) The only thing Mr. Kirsch said to Petitioner about her PCR proceedings is that ineffective assistance of counsel claims would have to wait for the PCR process. (Id. at 64:6-17.)

21. Atiya Woodall ("Atiya"), Petitioner's maternal aunt, testified at the hearing on October 10, 2018. (Id. at 82:4-83:3.)

22. Petitioner told Atiya that Stephen Kirsch was appointed to represent her. (Id. at 83:12-17.)

23. The first conversation Atiya had with Mr. Kirsch occurred when he was first appointed to represent Petitioner, and Petitioner asked Atiya to call him on her behalf. Mr. Kirsch explained to Atiya "the difference between the appeal and what I was - - the information that I was giving him." (Id. at 84:13-20.) The Court finds "the information" Atiya referred to was ineffective assistance of counsel claims that Petitioner wanted to raise, and that Mr. Kirsch explained the difference between direct appeal and PCR issues.

24. Atiya had unsuccessfully tried to call Mr. Kirsch several times between their first and second conversations. (Id. at 86:9-15.) Petitioner had contacted Atiya because she was frustrated that she could not reach Mr. Kirsch, prompting Atiya to call him on her behalf. (Id. at 86:19-23.) Atiya had a second conversation with Mr. Kirsch, which she said occurred "after we learned that her [Petitioner's] appeal was denied." (Id. at 85:25-86:1.)

25. During her second conversation with Mr. Kirsch after Petitioner's direct appeal was denied, Mr. Kirsch did not tell Atiya that his representation of Petitioner had ceased. (Id. at 91:9-24.)

26. Atiya stated that when Petitioner's appeal was denied "she never mentioned having a conversation with Kirsch. She just recalled the letter that she was denied." (Id. at 92:6-14.)

14

27. Petitioner testified at the evidentiary hearing on October 19, 2018. (October 19, 2018 H'rg Tr. at 3:2-9, 4:11-13, ECF No. 24.)

28. Petitioner testified that she received a letter from Mr. Kirsch around September 9, 2010, and she signed the bottom of the letter. (Id. at 6:14-7:4.)

29. Petitioner tried to reach Mr. Kirsch without success until a social worker set up a phone call for her. (Id. at 8:10-25.)

30. Petitioner remembers having a videoconference with someone about her case, but she only recalled that the person was a white man, the conversation lasted three to five minutes, and she recalled being told to be patient. (Id. at 9:1-24.)

31. Petitioner understood that Mr. Kirsch was a lawyer assigned to her case "to help me fight for my life." (Id. at 12:15-18.)

32. Petitioner reviewed Exhibit 9, the July 1, 2011 letter to her from Mr. Kirsch, and testified that she did not remember seeing that specific letter, but she had seen "previous denials from other people." (Id. at 14:20-15:9.) She said she was never aware that the Appellate Division had upheld her conviction or that the matter had gone to the state Supreme Court. (Id. at 15:16-16:5.)

33. Petitioner testified that she was never told about anything that Mr. Kirsch did on her behalf. (Id. at 17:4-12.)

34. Petitioner reviewed Exhibit No. 11, the January 28, 2011 letter from Mr. Kirsch to her, and testified that she must have seen the letter before because her signature was on it. (Id. at 18:7-18.)

35. Petitioner reviewed Exhibits 3 and 4, two identical letters, except Exhibit 3 was dated June 19, 2018 and Exhibit 4 was dated December 9, 2011. (Id. at 19:9-22:19.) Petitioner testified that she had never seen those letters before Mr. King, her counsel for the evidentiary hearing, showed them to her in June 2018.

Petitioner testified that she was never put on notice that her appeal was denied. (October 19, 2018 Hr'g Tr. at 22:20-22, ECF No. 24.)

36. Petitioner gave her aunt, Atiya Woodall, authorization to call Mr. Kirsch on her behalf. (Id. at 23:11-24:15.) Petitioner testified that Atiya never had contact with Mr. Kirsch "at all." (Id. at 26:2-4.)

37. Petitioner tried to call Mr. Kirsch "very often" to check up on her case. (Id. at 24:16-23.) She also wrote to him once. (Id. at 25:9-11). He never responded. (Id. at 25:12-13.)

38. Petitioner believed that her first phone conversation with Mr. Kirsch, where he told her to be patient about her appeal, occurred a few months after she received the September 9, 2010 letter from him. (Id. at 32:17-33:14.) The videoconference with him was also very brief, and the substance was the same as the phone call. (Id. at 33:15-34:2.)

39. The Court finds Petitioner was not credible when she testified that: (1) she did not discuss the merits of her appeal during the videoconference with Mr. Kirsch; (2) she did not talk about her trial; (3) she did not discuss issues she wanted to raise on appeal; and (4) she did not talk about anything her trial attorney had done. (Id. at 34:3-35:2.) The Court also finds not credible Petitioner's testimony that she never received a letter from Mr. Kirsch or the Public Defender's Office after the videoconference. (Id. at 35:11-24.)

40. The Court finds not credible Petitioner's testimony that she learned her appeal was denied around the time in-house counsel started to help her, which was years after the videoconference. (Id. at 35:25-36:18.) The Court finds Petitioner learned her appeal was denied when she received one or both of Mr. Kirsch's letters dated July 1, 2011 and December 9, 2011, and Petitioner shared the information with Atiya. The Court finds Petitioner not credible when she testified that Atiya Woodall never spoke to Mr. Kirsch on her behalf. The Court finds credible Atiya Woodall's testimony that her second conversation with Mr. Kirsch was brought about after she learned that Petitioner's appeal had been denied. There is no evidence that Petitioner attempted to contact Mr.

16

Kirsch after her appeal was denied (except through Atiya's second conversation with Mr. Kirsch before the New Jersey Supreme Court denied certification). Even if Petitioner tried but could not reach Mr. Kirsch by phone after her direct appeal was denied, there is no evidence that she wrote to him or wrote to the courts for information about her appeal or PCR proceedings.

41. Petitioner remembered going to in-house counsel to get help filling out post-conviction relief forms, because she remembers making claims that her trial attorney and Mr. Kirsch did not provide her with effective assistance of counsel. (Id. at 37:10-21.) Petitioner remembered having a hearing in front of a judge in Atlantic County in 2015, and the outcome was that her appeal was denied. (Id. at 38:19-39:3.) She does not remember appealing that decision. (Id. at 39:4-8.)

42. Petitioner filed a brief in response to Respondents' motion to dismiss her habeas petition on September 18, 2017. (Petr's Opp. Brief, ECF No. 9.) She argued, in part:

> [i]n petitioner's case, she had little or no knowledge of federal habeas procedure, not even the basics on what form to use and the statute of limitations. The prison paralegals failed to or did not adequately explain to petitioner the intricacies of habeas procedure. Finally, petitioner knew nothing about what books (if any) in the prison law library contained the habeas statutes. In addition to the deficiencies of legal assistance at petitioner's place of imprisonment, it must also be pointed out that the New Jersey Public Defender's Office provides no assistance or representation to prison inmate seeking to pursue habeas corpus claims in federal courts. The office advises inmates by letter of the results of their state court appeals and then suggests that the inmate might wish to file a federal habeas petition. The letter does not include a habeas corpus form to use, nor does it inform inmates of the complex

>       procedural rules involved in habeas
>       corpus litigation, such as the time
>       deadlines and need to exhaust all claims.
>       Finally, petitioner was under the
>       impression that her appellate lawyer
>       would continue to represent her through
>       her entire post-conviction process
>       attacking her conviction and sentence,
>       including federal habeas corpus. She was
>       unaware that the attorney who represented
>       her in her state post-conviction relief
>       and appeal therefrom would not continue
>       to represent her in her federal habeas
>       corpus proceeding. . . . Petitioner's
>       lack of diligence is largely attributable
>       to her being unaware of the strict time
>       deadlines for habeas filings which in
>       turn was based on the inadequacies of the
>       Public Defender's Office and prison law
>       library workers.
>
>   (ECF No. 9 at 5-9.)

IV. CONCLUSIONS OF LAW

1. Petitioner's direct appeal counsel, Stephen Kirsch, did not abandon Petitioner during her PCR proceedings because he no longer represented her after informing her by letter dated December 9, 2011, that her direct appeal was final, that she needed to seek appointment of PCR counsel, and that the one-year habeas statute of limitations would run until PCR proceedings were initiated. See McKeithan v. Varner, 108 F. App'x 55, 58 (3d Cir. 2004) (petitioner not entitled to equitable tolling where petitioner did not allege his attorney deceived or misled him about time constraints in filing habeas petition).

2. Petitioner was not reasonably diligent in pursuing her PCR petition or her federal habeas petition. See LaCava, 398 F.3d at 277 (petitioner did not exercise reasonable diligence by allowing more than 21-months to lapse until he inquired with the state supreme court about the status of his petition).

3. Petitioner's lack of legal knowledge and her difficulty in learning the habeas statute of limitations is not an

extraordinary circumstance justifying equitable tolling. Even if a prison paralegal misinformed Petitioner about the habeas statute of limitations, that is not an extraordinary circumstance that will justify equitable tolling. See Johnson v. Hendricks, 314 F.3d 159, 163 (3d Cir. 2002) (an attorney's mistake in determining a date a habeas petition is due is not an extraordinary circumstance for purposes of equitable tolling); Schlueter v. Varner, 384 F.3d 69, 77 (3d Cir. 2004) (attorney's failure to pursue PCR relief for two years was not an extraordinary circumstance where Petitioner knew attorney had not pursued PCR relief).

IV. CONCLUSION

For the reasons discussed above, Respondents' motion to dismiss the petition (ECF No. 8) will be granted. The case will be dismissed with prejudice.

V. CERTIFICATE OF APPEALABILITY

Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken from a final order in a proceeding under 28 U.S.C. § 2254. 28 U.S.C. § 2253(c)(1)(A). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." Miller-El v. Cockrell, 537 U.S. 322, 327 (2003).

For the reasons discussed above, jurists of reason could not disagree that Petitioner's habeas petition is barred by the one-year statute of limitations, and that Petitioner is not entitled to equitable tolling. Therefore, the Court will deny a certificate of appealability.

An appropriate order follows.

Dated: January 22, 2019

s/Renée Marie Bumb<br>
**RENÉE MARIE BUMB**<br>
**United States District Judge**